UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICKY LEE GRUNDY,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>HOWARD SKOLNICK, et al.,<br><br>　　　　　Defendants. | Case No.: 2:07-cv-00694-RLH-LRL<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#108;<br>Motion for Leave to File Second Amended<br>Complaint–#118) |

　　　　Before the Court is Defendants Jack Palmer, Cole Morrow, Jeffrey Froschauer (sued as Jeff Froschauer), Donald Helling (sued as Don Helling), Ronald Corda, Theodore D'Amico (sued as Ted D'Amico), Donna Jenkins, and James G. Cox's (named as Greg Cox or ADO Cox) **Motion for Summary Judgment** (#108, filed Dec. 2, 2010). Plaintiff Ricky Lee Grundy did not respond.

　　　　Also before the Court is Plaintiff's **Motion for Leave to File Second Amended Complaint** (#118, filed Jan. 25, 2011). Defendants did not respond.

**BACKGROUND**

　　　　This case involves a now ex-prisoner, Plaintiff Ricky Lee Grundy, who was incarcerated with the Nevada Department of Corrections ("NDOC"). Plaintiff alleges that various

1

NDOC officers and administrators violated his First, Eighth, and Fourteenth Amendment rights during his incarceration. The procedural background of this case is convoluted and complicated and it is unnecessary for the Court to explain most of the history of this case to handle this motion. However, the Court will explain some of the most recent history of this case.

Before the Court are Plaintiff's latest request to amend his complaint and Defendants' motion for summary judgment. Plaintiff filed two separate motions to extend time (##116, 119) to file a response to Defendants' motion for summary judgment. Plaintiff filed the first motion to extend time (#116) twelve days after the deadline to file a response had already passed. Nonetheless, the Court granted Plaintiff's motion. (#117, Order.) Plaintiff then filed a second motion seeking an extension so that he could file a motion for leave to file a second amended complaint. (#119.) The Court rejected that deficient reason for an extension and informed Plaintiff that the Court would "reject any request to file a second amended complaint" because of unfair prejudice to the Defendants. (#120.) Nonetheless, the Court did grant Plaintiff another short extension to file his response considering that the deadline had already passed again. (*Id.*) Plaintiff then appealed the Court's order granting Plaintiff an extension of time based upon the Court's statement that it would not entertain any further motions to amend. (#122, Notice of Appeal.) On March 23, 2011, the Ninth Circuit dismissed Plaintiff's appeal. (#125, Order.) Notwithstanding two extensions totaling approximately two months time and an appeal, Plaintiff failed to respond to Defendants' motion. The Court has now reviewed the outstanding motions and for the reasons discussed below, the Court denies Plaintiff's motion and grants Defendants' motion.

## DISCUSSION

### I. Motion to Amend

In this case, Plaintiff has repeatedly amended and attempted to amend his complaint futilely. As noted in this Court's prior Order (Dkt. #101, Sept. 20, 2010) denying amendment, this case is more than three years old and Plaintiff has had multiple opportunities to "get it right."


AO 72
(Rev. 8/82)

Amendment now would "only compound a case that has already become unnecessarily complex and multiplied," which would unfairly prejudice the Defendants. (*Id.*)  Also, in the Court's January 26, 2011 Order (Dkt. #120), the Court informed Plaintiff that it would not entertain any further motions to amend the complaint.  Therefore, the Court denies Plaintiff's motion to amend.

**II.      Motion for Summary Judgment**

      **A.      Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B. Plaintiff's Section 1983 Claims

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

Even though Plaintiff failed to respond to the motion, the Court will examine the evidence to determine whether Defendants have met their burden to show that there are no genuine issues of material fact as though Plaintiff had responded. The Court will address Plaintiff's claims in the order of alleged constitutional violation. The Court will then address each Defendant separately under that constitutional theory. However, the Defendants do not dispute that they are state actors and so the Court will not address that particular issue.

**1.     First Amendment Claims**

"A prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Hargis v. Foster*, 312 F.3d 404, 409 (9th Cir. 2002) (internal quotation omitted). A prisoner plaintiff must also show that the alleged retaliation was in fact retaliatory and did not advance a legitimate penological interest. *Id.*; *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). Furthermore, prison authorities may legitimately restrict a prisoner's associational rights "because of the institutional need to maintain order." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The Court must "evaluate [Plaintiff's] rights and the prison authorities alleged actions in light of [Plaintiff's] prisoner status." *Id.* Therefore, the Court must analyze challenges to First Amendment restrictions "in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners." *Id.*

Pursuant to this Court's Screening Order (#63), Plaintiff's Amended Complaint states First Amendment claims against Defendants Palmer, Morrow, Froshauer, and Helling. The Court will address each of these Defendants in turn.

**i.     Palmer**

Plaintiff alleges that Palmer said that he would do his best to take away Plaintiff's rights as well as keep Plaintiff from accessing the courts because of Plaintiff's involvement with the National Association for the Advancement of Colored People ("NAACP"). However, Palmer was the warden at Lovelock Correctional Center ("Lovelock")—which does not have a prison chapter of the NAACP. (Dkt. #108, Mot. Ex. A-2, Palmer Aff. ¶ 3.)[1] Plaintiff's First Amendment claims related to the NAACP did not arise until Plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC") and Southern Desert Correctional Center ("Southern

---

[1] All cited exhibits are attached to Defendants' Motion (Dkt. #108) unless otherwise noted. Thus, the Court will cite directly to the exhibit and not the Dkt #.

5

Desert")—prisons where Palmer did not work during the period of Plaintiff's specific complaints. (*Id*.) Further, Palmer testified that he did not make the statements Plaintiff alleges. (*See generally*, Ex. A-2, Palmer Aff.) Considering Palmer's testimony and Plaintiff's failure to meet his burden to set forth specific facts showing a genuine issue for trial, Palmer is entitled to judgment as a matter of law as to the First Amendment claims.

### ii. Morrow

Plaintiff also alleges that Defendant Morrow retaliated against him for protected NAACP activity. However, Morrow testified that he did not change Plaintiff's records, make any decisions as to Plaintiff's transfers, or do any of the other things that Plaintiff claims. (Ex. A-3, Morrow Aff. ¶¶ 8–10.) The only action Morrow did take as Plaintiff alleges was placing Plaintiff in a disciplinary segregation unit. (*Id.* ¶¶ 4, 13.) However, Morrow was not involved in the disciplinary process that resulted in that punishment, he merely carried out the transfer order. (*Id*.) Morrow also testified that although the unit was not 'air conditioned,' as Plaintiff claims, it was cooled by a swamp cooler which is roughly equivalent and satisfactory. (*Id.*) Morrow, therefore, did not retaliate against Plaintiff by this conduct. Considering this testimony and Plaintiff's failure to present contradictory evidence, the Court finds that Morrow is entitled to summary judgment on the First Amendment claims as no factual issues remain.

### iii. Froschauer

Plaintiff also alleges that Defendant Froschauer retaliated against him for protected NAACP activity. First, at least some of the events Plaintiff complains about occurred in 2003, more than four years prior to Plaintiff commencing this action. Therefore, claims based on those events are time barred. Furthermore, Froschauer testified that he did not do the things that Plaintiff claims he did. (Ex. A-4, Froschauer Aff. ¶¶ 5–6, 16.) Considering this testimony, and Plaintiff's failure to present contradictory evidence, the Court finds that Froschauer is entitled to summary judgment on the First Amendment claims as no factual issues remain.

/

AO 72
(Rev. 8/82)

          **iv.      Helling**

Plaintiff alleges that Defendant Helling, warden at NNCC, arranged to have Plaintiff transferred to Southern Desert after Plaintiff asked Senator Washington to investigate NNCC, removed him from his NAACP position because of his protected NAACP activity, and otherwise retaliated against him. However, Heller provides sufficient evidence to rebut these allegations by showing that they were not retaliatory but penologically legitimate actions. Helling testified that Plaintiff was removed from his NAACP positions and transferred as a result of Plaintiff's own misconduct such as election irregularities and interference and Plaintiff's abuse of power as the NAACP chapter president such as purchasing food for himself from NAACP funds. (Ex. A-5, Helling Aff. ¶ 10; Ex. B, Offender Information Summary Case Notes 5–6, 10.) Plaintiff was apparently caught embezzling by ordering extra food and merchandise for himself when ordering on behalf of the NAACP. Therefore, Plaintiff's removal and transfer served a legitimate penological interest. Further, Helling denies Plaintiff's other allegations. (Ex. A-5, Helling Aff. ¶¶ 7–10.) Considering this testimony and Plaintiff's failure to present contradictory evidence, Helling has carried his burden of production and no factual issues remain. Therefore, the Court finds that Helling is entitled to summary judgment on the First Amendment claims.

          **2.      Eighth Amendment Claims**

The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). But not every breach of that duty is a Constitutional violation. *Hutchinson*, 838 F.2d at 394. "Instead, the Eighth Amendment is violated when prison officials demonstrate deliberate indifference to serious medical needs of prisoners," *Hallet v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations omitted), or where "officials knew that the victim faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it," *Schwenk v. Hartford*, 204 F.3d 1187, 119 (9th Cir. 2000). In order to establish a Constitutional violation, plaintiffs must satisfy both an objective and

1 subjective component of a two-part test. *Hallet*, 296 F.3d at 744. First, plaintiffs must prove that
2 defendants have deprived them of the "minimal civilized measure of life's necessities." *Id.*
3 Second, plaintiffs must demonstrate that the defendants acted with "deliberate indifference" in
4 doing so. *Id.*

5 Prison officials are deliberately indifferent to a prisoner's serious medical needs
6 when the officials "deny, delay, or intentionally interfere with medical treatment." *Id.* However,
7 the officials' conduct must constitute "unnecessary and wanton infliction of pain" before the
8 conduct violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. Deliberate indifference is also
9 a subjective test and only focuses on what a defendant's mental state was at the time of the
10 incident, such that a prison official acts with "deliberate indifference ... only if the [prison official]
11 knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.
12 3d 1051, 1057 (9th Cir. 2004). Under this standard, the prison official must not only "be aware of
13 facts from which the inference could be drawn that a substantial risk of serious harm exists," but
14 they "must also draw the inference" of the risk's existence. *Id.*

15 In assessing the "substantial risk of serious harm," the Ninth Circuit has stated
16 defendants must have actual knowledge of the risk. "If a [prison official] should have been aware
17 of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how
18 severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)
19 (internal citations omitted). Thus, even if actual knowledge can be established, Plaintiff must
20 demonstrate sufficient evidence to support a finding "that prison officials intentionally interfered
21 with his previously prescribed medical treatment." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir.
22 2000).

23 Pursuant to the Court's Screening Order (#63), Plaintiff's Amended Complaint
24 states Eighth Amendment claims against Defendants Morrow, Palmer, Jenkins, Corda,
25 /
26 /

8

D'Amico, and Crawford[2] for knowingly transferring Plaintiff between facilities and living arrangements where his medical requirements could not be met, making him ill by taking away his c-pap device, putting him in physical danger, and denying him reasonable medical care. The Court will address each of these Defendants in turn.

### i. Morrow

Morrow denies each and every allegation that Plaintiff made against him. (*See generally* Ex. A-3, Morrow Aff.) Also, Morrow did not make any medical decisions for any prisoners, including Plaintiff. (*Id.* ¶ 7; Ex. A-2, Palmer Aff. ¶ 10.) Considering this testimony and Plaintiff's failure to present contradictory evidence, the Court finds that Morrow is entitled to summary judgment on the Eighth Amendment claims as no factual issues remain.

### ii. Palmer

Plaintiff's claims against Palmer fail. Plaintiff made various medical complaints while at Lovelock, but he was placed in the infirmary and then transferred to NNCC since these medical issues could not be properly accommodated at Lovelock. (Ex. A-2, Palmer Aff. ¶ 5.) In fact, these actions seem genuinely attentive of Plaintiff's medical needs and do not show deliberate indifference violating the Eighth Amendment. Considering this testimony and Plaintiff's failure to present contradictory evidence, the Court finds that Palmer is entitled to summary judgment on the Eighth Amendment claims as no factual issues remain.

### iii. Jenkins

Plaintiff merely alleged that Jenkins made improper statements, not that he needed and she deprived him of medical care. (Dkt. #63, Am. Compl. 21–22.) Statements without further action or specific inaction cannot amount to deliberate indifference to serious medical needs or ignoring a substantial risk of harm. Therefore, the Court finds that Jenkins is entitled to summary judgment on the Eighth Amendment claims.

---

[2] The Court interchanged the spelling of Crawford's name with "Cranford" in the Screening Order. Also, Crawford will be addressed below in the Court's equal protection analysis in Section II.B.5.

### iv. Corda

Plaintiff alleges that Corda took away Plaintiff's right to medical boots and did nothing to replace Plaintiff's c-pap device after Plaintiff advised him that it was missing. Plaintiff filed three grievances related to his lost medical boots, which Corda handled. Corda denied each grievance for technical deficiencies such as a lack of a signature or failure to attach the proper forms. (Ex. A-7, Corda Aff. ¶¶ 9–11.) Also, Corda directed Plaintiff to make the appropriate requests to the medical staff and helped Plaintiff obtain high topped boots from the laundry staff. (*Id.* ¶¶ 11–12.) As to the c-pap device, Plaintiff only sought monetary reimbursement, not replacement of the device. (*Id.* at ¶ 13.) These facts do not amount to deprivations of life's necessities or deliberate indifference. Therefore, considering this testimony and Plaintiff's failure to present contradictory evidence, the Court finds that Corda is entitled to summary judgment on the Eighth Amendment claims.

### v. D'Amico

Plaintiff alleges that, as medical director with knowledge of Plaintiff's needs, D'Amico: (1) did not stop Corda and Helling from moving Plaintiff to yards that did not support Plaintiff's needs, and (2) eliminated Plaintiff's medical restrictions without examining him, thus putting him at serious medical risk. During the relevant time period (before D'Amico retired), Plaintiff was only transferred between facilities at which neither Corda nor Helling worked. (Ex. A-8, D'Amico Aff. ¶ 6.) (Plaintiff also did not actually address these claims against Corda or Helling.) Further, D'Amico testified that he was not involved in any transfer decisions. (*Id.* ¶ 7.) Nor was D'Amico involved with any decision to eliminate Plaintiff's medical restrictions. (*Id.* ¶ 8.) Considering this testimony and Plaintiff's failure to present contradictory evidence, the Court finds that D'Amico is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### 3. Fourteenth Amendment Procedural Due Process Claims

"Procedural due process provides 'a guarantee of fair procedures in connection with any deprivation of life, liberty, or property' by the government." *Denney v. Drug Enforcement*

*Admin.*, 508 F. Supp. 2d 815, 833 (E.D. Cal. 2007) (quoting *Collins v. City of Harker Heights*, 530 U.S. 115 (1992)). Pursuant to the Court's Screening Order (#63), Plaintiff's Amended Complaint states valid claims against Sims, Jenkins, Corda, Helling, and Palmer for depriving Plaintiff of property without fair procedures by removing his legal papers without cause or explanation.

### i. Jenkins

Plaintiff alleges that Jenkins took his legal paperwork and conspired with Defendants Helling and Palmer to keep the paperwork away from him so that he could not effectively access the courts. Jenkins denies these allegations and presents evidence showing that Plaintiff's property was merely kept in the property room because it exceeded space limitations. (Ex. C, Inmate Issue History 8–9, 14, 17–18.) Plaintiff was told about the space limitations and was also informed that he could send any excess property home or have it donated. (*Id.*) Also, Plaintiff admitted that he was not upset about the property issues but believed that Jenkins was racist. (*Id.* at 14.) Considering the evidence before the Court, it finds that Jenkins is entitled to summary judgment on this procedural due process claim as she has carried her burden of production and no factual issues remain.

### ii. Corda

Plaintiff alleges that Corda told him that he did not have a right to all of his property or paperwork at NNCC, Corda had some of his property and paperwork put in the property room, and thereafter other officers stole some of his paperwork. Corda testified that he does not recall having done so, but that he may have told officers to make sure that the property complied with regulations. (Ex. A-7, Corda Aff. ¶ 15.) It is also true that prisoners do not have a right to all of their property (including paperwork) while incarcerated and that specific regulations limit what prisoners are allowed to have. Further, generally there is no *respondeat superior* or vicarious liability for § 1983 claims. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Therefore, Corda is not liable for any alleged theft by other officers. Considering the evidence that Corda presents, and Plaintiff's presentment of no contradictory evidence, the Court finds that

1  Corda is entitled to summary judgment on the procedural due process claim as no factual issues
2  remain.

### iii.     Helling

Plaintiff alleges that Helling acted to cover up Jenkins stealing Plaintiff's property. The conduct that Plaintiff appears to complain about is that Helling's denial of Plaintiff's appeal and support of an Inspector General's findings in an investigation into this matter. The Inspector General's investigation determined that Plaintiff's complaints regarding Jenkins held no merit. (Ex. E, Report of Personnel Complaint Investigation.) Helling supported the finding and denied Plaintiff's grievance appeal. This does not demonstrate the requisite causal link between Jenkins' alleged conduct and Helling for liability. *Fayle*, 607 F.2d at 862. Therefore, considering the evidence that Helling presents and Plaintiff's failure to present contradictory evidence, the Court finds that Helling has carried his burden of production and is entitled to summary judgment on the procedural due process claim.

### iv.     Palmer

Plaintiff alleges that Palmer told Plaintiff that he would do his best to take away Plaintiff's rights and conspired with Helling and Jenkins to prevent Plaintiff from accessing the courts. Plaintiff does not allege the specific actions Palmer supposedly took to take away Plaintiff's rights or how he conspired with other parties (nor does he allege what the other parties supposedly did either). Such "vague and conclusory allegations" are insufficient to survive a motion to dismiss, *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), much less a motion for summary judgment supported by evidence. Further, Palmer specifically denies these allegations. (Ex. A-2, Palmer Aff. ¶¶ 11–17.) Therefore, considering the evidence that Defendants present, and Plaintiff's presentment of no contradictory evidence, the Court finds that Palmer is entitled to summary judgment on the procedural due process claim as he has carried his burden of production and no factual issues remain.

/

### 4. Fourteenth Amendment Equal Protection Claims

Finally, Plaintiff alleges that various Defendants denied him equal protection under the law by writing him disciplinary notices, failing to give him fair hearings, and otherwise treating him differently than other inmates based on his membership with the NAACP. The Court construes these claims as equal protection claims based on racial discrimination.

#### i. Jenkins, Morrow, Palmer, Froshauer, and Corda

Each of these Defendants denies writing Plaintiff any disciplinary notices or failing to give him fair hearings. (Ex. A-6, Jenkins Aff. ¶ 15; Ex. A-7, Corda Aff. ¶ 20; Ex. A-3, Morrow Aff. ¶ 18; Ex. A-2, Palmer Aff. ¶ 17; Ex. A-4, Froschauer Aff. ¶ 22.) Also, the Court's previous findings for these Defendants supports the finding here that they did not violate Plaintiff's right to equal protection under the Fourteenth Amendment. Therefore, considering this evidence, and Plaintiff's failure to present contradictory evidence, the Court finds that these Defendants are entitled to summary judgment on Plaintiff's equal protection claims because they have met their burden of production and no factual issues remain.

#### ii. Cox[3]

Plaintiff alleges that Cox violated his right to equal protection by allowing false information to become part of his record, failing to stop others from abusing him, failing to address his medical needs, allowing him to be transferred to Ely State Prison where the elevation aggravated his medical conditions, allowing him to be replaced as president of the NAACP prison chapter when he was sick, and similar claims. (*See* Dkt. #64, Am. Compl. ¶¶ 19–20, 30–31.) Cox presents evidence that he was not a party to most of these actions or decisions and that many of the disputed actions were disciplinary measures taken in the normal course and that prison officials

---

[3] It is unclear whether Defendant Cox is actually a defendant in this case. In its Screening Order (#63), the Court held that Plaintiff had stated a claim against Cox. However, Plaintiff's Amended Complaint (#64) does not list Cox as a defendant even though Plaintiff mentions him and seems to make claims against him. Also, the Court's case management system (CM/ECF) shows that Cox was terminated as a Defendant on January 20, 2009, the date the Amended Complaint was filed. Nonetheless, Cox joined the other Defendants in filing an Answer, (Dkt. #68), and in filing this motion. Therefore, the Court will address Cox as if he were a defendant.

1   adhered to all proper procedures during the determination of these matters. (Ex. C, Inmate History
2   Report.; Ex. A-9, Cox Aff. ¶¶ 19-20.)   Further, Cox testifies that he did not treat plaintiff
3   differently than any other inmate. (Ex. A-9, Cox Aff. ¶¶ 19-20.)   Therefore, considering this
4   evidence, and Plaintiff's failure to present contradictory evidence, the Court finds that Cox is
5   entitled to summary judgment on Plaintiff's equal protection claims because Cox has met his
6   burden of production and Plaintiff has not responded with any factual matters to create a genuine
7   dispute.

**5.   Unserved Defendants**

9   The Nevada Attorney General's Office accepted service of process for the above
10  mentioned Defendants. However, the Court's Screening Order held that Plaintiff had stated valid
11  claims against two additional parties: Jackie Crawford and "Sgt. Sims." The Attorney General's
12  Office did not accept service on behalf of these individuals stating that it could not identify Sims
13  and that Crawford was no longer a state employee. (Dkt. #84, Acceptance of Service of Process.)
14  Plaintiff did not otherwise serve either of these defendants. Therefore the Court dismisses the
15  claims against these parties *sua sponte* under Fed. R. Civ. P. 12(b)(5) for insufficient service of
16  process.

**6.   Failure to Exhaust Administrative Remedies**

18  The Court also notes that Plaintiff failed to exhaust his administrative remedies
19  under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), for any of the above claims except
20  certain claims against Defendant Jenkins. (*See generally* Ex. C, Inmate Issue History.) Such
21  exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Although Plaintiff filed
22  many and various grievances, many were incomplete, unclear (not naming a party), or informal.
23  (*See generally* Ex. C, Inmate Issue History.) Sometimes Plaintiff simply didn't attach the
24  necessary documents to his grievances. (*See, e.g.*, Ex. C, Inmate Issue History 10.) Those
25  grievances that were proper generally weren't appealed. (*See generally id*.) The only ones that
26  were fully and properly grieved were those against Jenkins. (*Id*. 8–9, 14–15.) Therefore, the Court

AO 72
(Rev. 8/82)

would also grant summary judgment for all Defendants except Jenkins on their exhaustion defense.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (#118) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#108) is GRANTED and all other claims are dismissed. The Clerk of the Court is directed to close this case.

Dated: March 31, 2011.

_____
**ROGER L. HUNT**
**Chief United States District Judge**